**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH SCHWARTZ, | : |
| | : |
| Plaintiff, | : Case No. |
| | : |
| v. | : COMPLAINT |
| | : |
| PEOPLE'S UNITED FINANCIAL, INC., | : DEMAND FOR JURY TRIAL |
| JOHN P. BARNES, COLLIN P. BARON, | : |
| GEORGE CARTER, JANE CHWICK, | : |
| WILLIAM F. CRUGER, JR., JOHN K. | : |
| DWIGHT, JERRY FRANKLIN, JANET M. | : |
| HANSEN, NANCY MCALLISTER, MARK | : |
| W. RICHARDS, and KIRK W. WALTERS, | : |
| | : |
| Defendants. | : |

Plaintiff Joseph Schwartz ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.      Plaintiff brings this action against People's United Financial, Inc. ("People's United" or the "Company") and the members of People's United's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by M&T Bank Corporation ("M&T") (the "Proposed Transaction").

2.      On February 21, 2021, People's United and M&T entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each People's United shareholder

will receive 0.118 shares of M&T common stock for each share of People's United common stock that they own.

3.      On April 23, 2021, the Company filed a Definitive Proxy Statement (the "Proxy") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction.  The failure to adequately disclose such material information renders the Proxy false and misleading.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, People's United's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of People's United.

9.     Defendant People's United is a Delaware corporation, with its principal executive offices located at 850 Main Street, Bridgeport, Connecticut 06604.  People's United's shares trade on the Nasdaq Global Select Market under the ticker symbol "PBCT."

10.     Defendant John P. Barnes is and has been at all relevant times, Chairman of the Board, Chief Executive Officer and a director of the Company.

11.     Defendant Collin P. Baron is, and has been at all relevant times, a director of the Company.

12.     Defendant George P. Carter is, and has been at all relevant times, the Lead Director of the Board and a director of the Company.

13.     Defendant Jane Chwick is, and has been at all relevant times, a director of the Company.

14.     Defendant William F. Cruger, Jr. is, and has been at all relevant times, a director of the Company.

15.     Defendant John K. Dwight is, and has been at all relevant times, a director of the Company.

16.     Defendant Jerry Franklin is, and has been at all relevant times, a director of the Company.

17.     Defendant Janet M. Hansen is, and has been at all relevant times, a director of the Company.

18.     Defendant Nancy McAllister is, and has been at all relevant times, a director of the Company.

19.     Defendant Mark W. Richards is, and has been at all relevant times, a director of the Company.

20.     Defendant Kirk W. Walters is, and has been at all relevant times, a director of the Company.

21.     Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Company Background**

22.     People's United is a bank holding company and a financial holding company registered under the Bank Holding Company Act of 1956, as amended.  People's United is the holding company for People's United Bank, National Association ("People's United Bank") that provides commercial banking, retail banking, and wealth management services to individual, corporate, and municipal customers.

23.     The Company's operating segments include two reportable segments: Commercial Banking and Retail Banking.  The Commercial Banking segment offers commercial deposit products, commercial real estate lending, middle market and business banking, equipment financing, mortgage warehouse and asset-based lending, treasury management services, and

capital market capabilities.   The Retail Banking segment offers consumer lending, including residential mortgage and home equity lending; and consumer deposit gathering services.   This segment also provides brokerage, financial and investment advisory, investment management, life insurance, financial management and planning, and non-institutional trust services.   In addition, the Company offers cash management, municipal banking, online banking, investment trading, and telephone banking services.

**The Proposed Transaction**

24.     On February 22, 2021, People's United and M&T issued a joint press release announcing the Proposed Transaction stating, in pertinent part:

> BUFFALO, N.Y. and BRIDGEPORT, Conn., Feb. 22, 2021 -- M&T Bank Corporation (NYSE: MTB) ("M&T") and People's United Financial, Inc. (NASDAQ: PBCT) ("People's United") announced today that they have entered into a definitive agreement under which M&T will acquire People's United in an all-stock transaction.
>
> The combined company will create a diversified, community-focused banking franchise with approximately $200 billion in assets and a network of more than 1,100 branches and over 2,000 ATMs that spans 12 states from Maine to Virginia and the District of Columbia.  The combined franchise will operate across some of the most populated and attractive banking markets in the U.S. As part of the transaction, People's United's current headquarters in Bridgeport, Connecticut will become the New England regional headquarters for M&T, further strengthening the combined company's commitment to Connecticut and the region.
>
> Under the terms of the agreement, People's United shareholders will receive 0.118 of a share of M&T common stock for each People's United share they own. Following completion of the transaction, former People's United shareholders will collectively own approximately 28% of the combined company.  The implied total transaction value based on closing prices on February 19, 2021 is approximately $7.6 billion.
>
> "In People's United, we have found a partner with an equally long history of serving and supporting customers, businesses and communities," said René Jones, chairman and chief executive officer of M&T, who will lead the combined company in the same capacity.  "Combining our common legacies and our complementary footprints will strengthen our ability to serve our communities and customers, and provide solutions that make a difference in people's lives.  I am

incredibly excited about this opportunity and look forward to welcoming new customers and team members to our M&T family."

"M&T is a like-minded partner that shares our culture of supporting communities by focusing on building meaningful relationships and providing personalized products, services and local market expertise to customers, while building on our legacy of excellence in service," said Jack Barnes, chairman and chief executive officer of People's United.   "The merger extends our reach by providing customers access to a larger banking network and an expanded array of services.  I am confident our shared community banking philosophies will provide significant long-term value for our shareholders, employees and loyal customers."

**Key attractions of the proposed transaction**

- **Unique strategic position and enhanced platform for growth**: The merger will create the leading community-focused commercial bank in the Northeast and Mid-Atlantic regions, with the scale and share to compete effectively.  The two companies have a complementary top-tier deposit share in core markets with a top three share in most of their respective top 10 markets.  The footprint of the combined company spans an economically diverse region that accounts for over 20% of the U.S. population and over 25% of U.S. GDP.

- **Shared commitment to local communities**: Both companies have been long recognized for their community commitments and longstanding support of civic organizations.  Over the past decade, M&T, through The M&T Charitable Foundation, has donated $263.7 million to over 2,800 nonprofit organizations across eight states and the District of Columbia.  M&T Bank has been awarded the highest possible Community Reinvestment Act rating on every examination since 1982 from the Federal Reserve Bank of New York.

  People's United Community Foundation and People's United Community Foundation of Eastern Massachusetts has granted $40 million to nonprofits aligned with the Foundations' collective mission since its inception in 2007.  Through the foundations, M&T will use $90 million to support charitable activities in the communities currently served by People's United.

- **Compelling financial impacts**: M&T expects the transaction to be immediately accretive to its tangible book value per share.  It is further expected that the transaction will be 10-12% accretive to M&T's earnings per share in 2023, reflecting estimated annual cost synergies of approximately $330 million.

Upon closing, Jack Barnes, Kirk Walters and three other current members of the board of directors of People's United will join M&T's board of directors.

**The Proxy Materially Misleads People's United Stockholders by Omitting Material Information**

25.     On April 23, 2021, defendants filed the materially incomplete and misleading Proxy with the SEC and disseminated it to People's United's stockholders.  Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information.

26.     *First*, the Proxy omits material information regarding the financial analyses performed by the Company's financial advisors, Keefe, Bruyette & Woods, Inc. ("KBW") and J.P. Morgan Securities LLC ("J.P. Morgan").

27.     With respect to KBW's People's United Selected Companies Analysis, the Proxy fails to disclose the individual multiples and metrics for each of the companies observed in the analyses.

28.     With respect to KBW's M&T Selected Companies Analysis, the Proxy fails to disclose the individual multiples and metrics for each of the companies observed in the analyses.

29.     With respect to KBW's Selected Transactions Analysis, the Proxy fails to disclose the individual multiples and metrics for each of the transactions observed in the analyses.

30.     With respect to KBW's Financial Impact Analysis, the Proxy fails to disclose: (i) the pro forma assumptions used in the analysis; and (ii) the specific accretion/dilution figures resulting from the analysis.

31.     With respect to KBW's People's United Dividend Discount Model Analysis, the Proxy fails to disclose: (i) the projected dividends used in the analysis; (ii) the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (iii) People's United's 2026 earnings; and (iv) People's United's terminal value.

32.     With respect to KBW's M&T Dividend Discount Model Analysis, the Proxy fails to disclose: (i) the projected dividends used in the analysis; (ii) the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (iii) M&T's 2026 earnings; and (iv) M&T's terminal value.

33.     With respect to KBW's Pro Forma Dividend Discount Model Analysis, the Proxy fails to disclose: (i) the projected dividends used in the analysis; (ii) the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (iii) the pro forma combined entity's estimated 2026 earnings; and (iv) the pro forma combined company's terminal value.

34.     With respect to J.P. Morgan's People's United Public Trading Multiples Analysis, the Proxy fails to disclose the individual multiples and metrics for each of the companies observed in the analyses.

35.     With respect to J.P. Morgan's People's M&T Public Trading Multiples Analysis, the Proxy fails to disclose the individual multiples and metrics for each of the companies observed in the analyses.

36.     With respect to J.P. Morgan's People's United Dividend Discount Analysis, the Proxy fails to disclose: (i) the projected dividends used in the analysis; (ii) the inputs and assumptions underlying the discount rates ranging from 10.5% to 11.5%; (iii) projected 2026 estimated net income; and (iv) People's United's terminal value.

37.     With respect to J.P. Morgan's M&T Dividend Discount Analysis, the Proxy fails to disclose: (i) the projected dividends used in the analysis; (ii) the inputs and assumptions underlying the discount rates ranging from 10.5% to 11.5%; (iii) projected 2026 estimated net income; and (iv) M&T's terminal value.

38.     With respect to J.P. Morgan's Value Creation Analysis, the Proxy fails to disclose the expected synergies, net of restructuring charges (using synergy net of restructuring charges amounts reviewed and approved by People's United management), utilized in the analysis.

39.     With respect to J.P. Morgan's analyst share price targets analysis for People's United and M&T, the Proxy fails to disclose: (i) the individual price targets analyzed; and (ii) the sources thereof.

40.     **Second**, the Proxy fails to disclose material information concerning J.P. Morgan's potential conflicts of interest.

41.     The Proxy fails to disclose the timing and nature of the past services that J.P. Morgan provided to the Company, M&T, and their affiliates, that resulted in "aggregate fees recognized by J.P. Morgan from People's United [of] approximately $35,000 and from M&T [of] approximately $4 million."  Proxy at 99.

42.     **Third**, the Proxy fails to disclose material information concerning Company insiders' potential conflicts of interest.

43.     Specifically, the Proxy fails to disclose the details of the employment and retention-related discussions and negotiations that occurred between M&T and People's United's officers and directors, including who participated in all such communications, when they occurred and their content.

44.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

45.     Plaintiff repeats all previous allegations as if set forth in full.

46.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about KBW's and J.P. Morgan's financial analyses and J.P. Morgan's and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

48.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     The Individual Defendants acted as controlling persons of People's United within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of People's United, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

55.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that they reviewed and considered-descriptions the Company directors had input into.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of defendants' conduct, People's United stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of People's United, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  May 12, 2021                                **WEISSLAW LLP**

                                                    By _____
                                                         Richard A. Acocelli
                                                         1500 Broadway, 16th Floor
                                                         New York, New York 10036
                                                         Telephone: (212) 682-3025
                                                         Facsimile: (212) 682-3010
                                                         Email: racocelli@weisslawllp.com

                                                    *Attorneys for Plaintiff*

**OF COUNSEL:**

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
-and-
212 W. Spring Valley Road
Richardson, Texas 75081

*Attorneys for Plaintiff*